UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JOHN VERNON FIELDS,

Petitioner,

v.

RENEE BAKER, *et al.*,

Defendants.

Case No. 3:16-cv-00298-MMD-CBC

ORDER

This habeas matter comes before the Court on Respondents' motion to dismiss Petitioner John Vernon Fields' ("Petitioner or Fields") amended petition. (ECF No. 21.) Fields opposed (ECF No. 30), and Respondents replied (ECF No. 37).

**I.     BACKGROUND AND PROCEDURAL HISTORY**

In August 2007, a jury convicted Fields of first-degree murder with a deadly weapon and conspiracy to commit murder (Exhibits ("Exhs") 52, 53).[1] A jury had also convicted his wife Linda Fields ("Linda") for first-degree murder in March 2007. (*See* ECF No. 15 at 3; Nevada Supreme Court Case No. 49417.) The state district court sentenced Fields to life without the possibility of parole for the murder count, with an equal and consecutive term for the deadly weapon enhancement, and to a term of 48 to 120 months for the conspiracy count, concurrent to the murder sentence. (Exh. 55.) Judgment of conviction was entered on October 25, 2007. (Exh. 57.)

///

///

---

[1]Exhibits referenced in this order are exhibits to Respondents' motion to dismiss (ECF No. 21) and are found at ECF Nos. 22–24, 26.

1 | The Nevada Supreme Court affirmed Fields' convictions in a December 10, 2009 published opinion. (Exh. 79.) Two justices dissented, concluding that the district court erred in admitting evidence of prior bad acts, and that the error warranted a new trial. (*Id.*) The same day, a three-judge panel of the Nevada Supreme Court reversed Linda's conviction and held that the trial court erred in admitting the same bad-acts evidence that was admitted at Fields' trial at Linda's trial and that the error warranted a new trial. (Nevada Supreme Court Case No. 49417.)[2]

The Nevada Supreme Court affirmed the denial of Fields' state postconviction habeas corpus petition in February 2016. (Exh. 103.)

Fields dispatched his federal habeas petition for filing on May 26, 2016. (ECF No. 6.) This Court granted his motion for appointment of counsel, and Fields filed an amended petition in November 17, 2017. (ECF No. 15.)

Respondents move to dismiss the petition, arguing that some claims do not relate back to the original petition and that some grounds are unexhausted. (ECF No. 21.)

## II. DISCUSSION

### A. Relation Back

Respondents argue that grounds 2, 3, and 4 of the amended petition do not relate back to the original petition. (ECF No. 21 at 2–6.) The Court agrees.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year statute of limitations on the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d). The one-year time limitation can run from the date on which a petitioner's judgment became final by conclusion of direct review, or the expiration of the time for seeking direct review. *Id.* § 2244(d)(1)(A). A new claim in an amended petition that is filed after the expiration of the AEDPA's one-year limitation period will be timely only if the new claim relates back to a claim in a timely-filed pleading under Rule 15(c) of the Federal Rules of Civil Procedure. Under Rule 15(c), a claim relates back if the claim arises out of "the same

///

---

[2]On re-trial, a jury convicted Linda of voluntary manslaughter. (Nevada Supreme Court Case No. 65276.)

conduct, transaction or occurrence" as a claim in the timely pleading. *Mayle v. Felix*, 545 U.S. 644 (2005).

In *Mayle*, the United States Supreme Court held that habeas claims in an amended petition do not arise out of "the same conduct, transaction or occurrence" as claims in the original petition merely because the claims all challenge the same trial, conviction or sentence. *Id.* at 655–64. Rather, under the construction of the rule approved in *Mayle*, Rule 15(c) permits relation back of habeas claims asserted in an amended petition "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id.* at 657. In this regard, the reviewing court looks to "the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 659. A claim that merely adds "a new legal theory tied to the same operative facts as those initially alleged" will relate back and be timely. *Id.* at 658 & n.5; *see also Nguyen v. Curry*, 736 F.3d 1287, 1297 (9th Cir. 2013).

Here, the parties do not dispute that the original petition was timely filed and that the amended petition was filed after the expiration of the one-year time limitation. Respondents argue only that grounds 2, 3, and 4 of the amended petition do not relate back to the original petition and should be dismissed. (ECF No. 21 at 2–6.)

### 1. Ground 2

In the amended petition, Fields asserts that the trial court erred when it excluded evidence that Michael Walker had committed the crime in violation of his Fourteenth Amendment due process rights. (ECF No. 15 at 14–17.) The amended petition sets forth at length the proffered testimony of Claire Grondona, who claimed that another woman, Leah Rand, told Grondona more than three years after the murder that she had reason to believe that Walker had committed the murder.

In Fields' original petition, he claimed that his attorney rendered ineffective assistance for failing to investigate "the most likely killers," including Walker, Michael Wilson, Ralph Mackley, Niqua Walker (Michael's wife), "and possibly Linda Walker Fields."

3

(ECF No. 6 at 4.) He set forth no other factual allegations to support the claim. A common core of operative facts does not unite the original claim with amended ground 2. Fields states in his original petition that he intended to set forth all claims as both ineffective assistance of counsel ("IAC") claims and substantive claims. (*Id.* at 14.) However, even if Fields intended to bring this claim as both an IAC claim for failure to investigate and a due process claim, the new claim regarding the trial court's exclusion of evidence that defense counsel tried to present does not share a common core of operative facts with the due process claim. Thus, the IAC claim does not relate back to even the due process claim. Accordingly, amended ground 2 does not relate back and is untimely.

### 2. Ground 3

Fields contends that his constitutional rights against self-incrimination and to the presumption of innocence were violated when the trial court and the prosecution commented on Fields' silence when accusations were made against him during recorded phone calls between Fields and his wife Linda while his wife was in jail on this murder charge. (ECF No. 15 at 17–18.) In ground 2 of the original petition, Fields argued only that the trial court erred in allowing the introduction of the phone calls because there was no "trustworthy assurance" because they were presented in selected excerpts. (ECF No. 6 at 10.) The only similarity between these claims is that the subject of both claims is the recorded phone calls. The issue of the presentation of the evidence—the prosecution and court's comments on Fields' silence—does not share a common core of operative facts with the claim regarding the decision to admit the evidence. Ground 3, therefore, does not relate back and is also untimely.

### 3. Ground 4

Fields asserts that his counsel was ineffective when counsel failed to investigate and to introduce evidence of Fields' good character as part of the defense in violation of Fields' Sixth and Fourteenth Amendment rights. (ECF No. 15 at 19–22.) Fields acknowledges that this ground does not relate back to the original petition. (*See* ECF No. 30 at 8.) Thus, ground 4 is untimely.

## B. Actual Innocence

Fields claims that he can overcome the timeliness bar because new evidence undermines the validity of his conviction and demonstrates that he is actually innocent. (*Id.* at 8–23.) A convincing showing of actual innocence may enable habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims. *House v. Bell*, 547 U.S. 518 (2006); *Schlup v. Delo*, 513 U.S. 298 (1995). In *McQuiggin v. Perkins*, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations." 569 U.S. 383, 386 (2013). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. Tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329; *see also House*, 547 U.S. at 538 (emphasizing that the *Schlup* standard is "demanding" and seldom met). In assessing a *Schlup* gateway claim, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U.S. at 332; *McQuiggin*, 569 U.S. at 400 ("Focusing on the merits of a petitioner's actual-innocence claim and taking account of delay in that context, rather than treating timeliness as a threshold inquiry, is tuned to the rationale underlying the miscarriage of justice exception–i.e., ensuring that federal constitutional errors do not result in the incarceration of innocent persons.") (internal quotations and citations omitted).

Fields offers the following in support of his actual innocence: (1) years after the trial Michael Walker told investigators for the Federal Public Defender ("FPD") that he had no reason to think Fields was involved in the murder; (2) Fields is illiterate and thus could not have forged the victim's will; (3) good character evidence supports his innocence; (4) the

testimony of Sister Claire Grondona demonstrated his innocence; (5) flawed forensic evidence was presented at trial; and (6) the comparison between Linda's first and second trials shows that the prior bad act evidence was unfairly prejudicial.

First, Fields states that FPD investigators contacted Michael Walker in July 2017 (about ten years after Fields' trial). (ECF No. 30 at 15–16.) Fields includes declarations by the two investigators that state that Walker denied having any knowledge about the disposal of the victim's body, said he had no firsthand knowledge regarding the victim's death, and said he had no reason to believe that Fields was involved in the victim's death. (Pet. Exhs. 6, 7.)[3] The second declaration states that after the investigators interviewed Walker, one investigator prepared a declaration of Walker's statements. (Pet. Exh. 7.) She emailed and mailed Walker the declaration for his signature. The investigator reached Walker about two months later via telephone, and he declined to sign the declaration. Walker stated that revisiting the case had caused family conflict and grief. *Id.*

Second, Fields presents his 2004–2005 social security and disability documents, which his wife filled out on his behalf. (ECF No. 30 at 16; Pet. Exh. 37.) The documents state that Fields could not read well enough to pay bills, count change, handle a savings account, write checks or follow written instructions. (*See, e.g.,* Pet. Exh. 37 at 8.)

Third, Fields presents six declarations in which members of his family and former co-workers/friends vouch for Fields, stating that he was non-violent, law-abiding, and that they were shocked to hear he had been arrested for murder. (ECF No. 30 at 17–18; Pet. Exhs. 1–5, 35.)

Fourth, Fields points to the testimony of Sister Claire Grondona that was excluded at trial. (ECF No. 30 at 18–20.) In the offer of proof at trial, Grondona testified as follows: in July 2007, a woman named Leah Rand came to her home. (Exh. 50 at 3–16.) Rand was hysterical because Michael Walker had threatened to kill her and her children. *Id.*

///

---

[3] It is unclear why there are two separate sets of exhibits, which have been numbered separately. Exhibits in support of petitioner's first-amended petition are found at ECF Nos. 16, 28, 31, 33, and are referred to as Pet. Exh.

Rand said that in 2003, she was with Mike Walker, his wife Niqua, two other men, and the victim in Elko near a river. *Id.* Rand was drunk at the time. *Id.* The victim had "burned" Mike Walker for $750, so Walker hit the victim on the head with an unknown object. *Id.* Rand ran away and heard gunshots. *Id.* Rand and Niqua left together in one vehicle. *Id.* Rand had seen a mattress, plastic bags and tape in the area. *Id.* In 2004, Rand and Niqua were working at an Elks Lodge in Nevada County, California. *Id.* Mike Walker came to the lodge daily to smoke crank with Niqua. *Id.* Rand overheard them discussing who they should pin the murder on. *Id.* After that Walker threatened to kill Rand and her children with a screwdriver. *Id.*

Grondona testified that she did not report any of this when she first spoke with Rand because Grondona had previously reported Mike Walker to the police after he destroyed her son's car, but nothing had been done. *Id.* She also stated that she reported to the sheriff's office that she received a letter threatening that Walker was going to stab her, shoot her and burn her house down, but got no response from the sheriff's office. *Id.*

Fifth, Fields argues that flawed forensic evidence was presented at his trial. (ECF No. 30 at 20–22.) He contends that evidence that was presented at Linda's trial, but not Fields' trial, demonstrated that the date function of the victim's watch was broken and not reliable. (*See* Pet. Exh. 29 at 23–58.) He also states that testimony regarding where the victim's body was placed in the Jordan River in Utah in relation to where the body was discovered was probably incorrect. (*See id.* at 79–110.) Fields also points to testimony at Linda's second trial by a criminal investigative analyst and violent crime specialist who noted several deficiencies in law enforcement's investigation of the crime, including that the investigation was almost solely focused on the Fieldses as suspects. (*See* Pet. Exh. 31 at 145–163.)

Sixth, Fields contends that the fact that the "Mobert" prior bad act evidence was not introduced at Linda's second trial—where the jury found her guilty of voluntary manslaughter—demonstrates that it was unfairly prejudicial in his own trial. (ECF No. 30 at 22–23.)

This Court agrees with Respondents that Fields has failed to present new, reliable evidence showing that it is more likely than not that no reasonable juror would have convicted him, as required to pass through the *Schlup* gateway. *McQuiggin*, 569 U.S. at 383. Further, "actual innocence" means factual innocence, not mere legal insufficiency. *Bousley v. U.S.*, 523 U.S. 614, 623 (1998). Allegations that Walker recanted, that Fields struggles to read and write, and that friends and family considered him a man of good character do not go to Fields' actual innocence of murder. Fields does not even explain how the allegedly flawed forensic evidence would go to actual innocence. He argues the Mobert evidence was prejudicial; but again, such evidence does not establish Fields' actual innocence. Finally, Grondona's testimony that another woman implicated Walker in the crime years later was the subject of an offer of proof to the trial court. That court deemed this hearsay-within-hearsay testimony, which did not meet any exceptions to the hearsay rule, inadmissible. Moreover, Grondona's testimony, in and of itself—which is all that was presented to the trial court and now to this Court—is not evidence of factual innocence. Moreover, little within Grondona's testimony bore any indicia of reliability.

This Court determines that Fields has not met his burden of demonstrating that any of the above constitutes reliable new evidence such that no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. None of the proffered evidence is the type of evidence that the U.S. Supreme Court identified in *Schlup* as new and reliable. The affidavits and testimony are not "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324. None of the material demonstrates Fields' actual innocence. Mindful that, "[g]iven the rarity of such [tenable new and reliable] evidence, in virtually every case, the allegation of actual innocence has been summarily rejected," *Casey v. Moore*, 386 F.3d 896, 921 (9th Cir. 2004), the Court concludes that Fields' gateway claim of actual innocence fails. Thus, grounds 2, 3, and 4 are dismissed as untimely.

///

///

## C. Exhaustion

A federal court will not grant a state prisoner's petition for habeas relief until the prisoner has exhausted his available state remedies for all claims raised. *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b). A petitioner must give the state courts a fair opportunity to act on each of his claims before he presents those claims in a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995). A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral review proceedings. *See Casey*, 386 F.3d at 916; *Garrison v. McCarthey*, 653 F.2d 374, 376 (9th Cir. 1981).

In Ground 5, Fields asserts that his trial counsel rendered ineffective assistance when counsel failed to object to the admission of excerpts of recorded calls between John and Linda Fields as inadmissible hearsay and as a violation of Fields' Sixth Amendment confrontation clause rights. (ECF No. 15 at 22–34.) Fields concedes that this ground is unexhausted. (*Id.* at 22.)

## D. Field's Options Regarding Unexhausted Claim

A federal court may not entertain a habeas petition unless the petitioner has exhausted available and adequate state court remedies with respect to all claims in the petition. *Rose*, 455 U.S. at 510. A "mixed" petition containing both exhausted and unexhausted claims is subject to dismissal. *Id.* In the instant case, the Court concludes that grounds 2, 3, and 4 are dismissed as untimely, and ground 5 is unexhausted. Because the petition contains an unexhausted claim, Fields has the following options:

1. He may submit a sworn declaration voluntarily abandoning the unexhausted claim in his federal habeas petition, and proceed only on the exhausted claim;

2. He may return to state court to exhaust his unexhausted claim, In which case his federal habeas petition will be denied without prejudice; or

3. He may file a motion asking this court to stay and abey his exhausted federal habeas claim while he returns to state court to exhaust his unexhausted claim.

9

With respect to the third option, a district court has discretion to stay a petition that it may validly consider on the merits. *Rhines v. Weber*, 544 U.S. 269, 276, (2005). The *Rhines* Court stated:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. *Cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

*Rhines*, 544 U.S. at 277.

If Fields wishes to ask for a stay, he must file a motion for stay and abeyance in which he demonstrates good cause for his failure to exhaust his unexhausted claim in state court and presents argument regarding the question of whether his unexhausted claim is plainly meritless. Respondents would then be granted an opportunity to respond, and Fields to reply. Or Fields may file a declaration voluntarily abandoning his unexhausted claim, as described above.

Fields' failure to choose any of the three options listed above, or seek other appropriate relief from this Court, will result in his federal habeas petition being dismissed. Fields is advised to familiarize himself with the limitations periods for filing federal habeas petitions contained in 28 U.S.C. § 2244(d), as those limitations periods may have a direct and substantial effect on whatever choice he makes regarding his petition.

**III. CONCLUSION**

It is therefore ordered that Respondents' motion to dismiss certain grounds in the petition (ECF No. 21) is granted as follows: (1) grounds 2, 3, and 4 are dismissed as untimely; and (2) ground 5 is unexhausted.

It is further ordered that Petitioner has 30 days to either: (1) inform this Court in a sworn declaration that he wishes to formally and forever abandon the unexhausted ground for relief in his federal habeas petition and proceed on the exhausted ground; or (2) inform

this Court in a sworn declaration that he wishes to dismiss this petition without prejudice in order to return to state court to exhaust his unexhausted claim; or (3) file a motion for a stay and abeyance, asking this Court to hold his exhausted claim in abeyance while he returns to state court to exhaust his unexhausted claim. If Petitioner chooses to file a motion for a stay and abeyance, or seek other appropriate relief, Respondents may respond to such motion as provided in Local Rule 7-2.

It is further ordered that if Petitioner elects to abandon his unexhausted ground, Respondents will have 30 days from the date Petitioner serves his declaration of abandonment in which to file an answer to Petitioner's remaining ground for relief. The answer must contain all substantive and procedural arguments as to the surviving ground of the petition and must comply with Rule 5 of the Rules Governing Proceedings in the United States District Courts under 28 U.S.C. §2254.

It is further ordered that Petitioner has 30 days following service of Respondents' answer in which to file a reply.

It is further ordered that if Petitioner fails to respond to this order within the time permitted, this case may be dismissed.

It is further ordered that Respondents' motion for leave to file exhibits under seal (ECF No. 25) is granted.

It is further ordered that Petitioner's first and second motions for extension of time to file his opposition to the motion to dismiss (ECF Nos. 27, 29) are both granted *nunc pro tunc*.

It is further ordered that Petitioner's motion for leave to file exhibits under seal (ECF No. 32) is granted.

It is further ordered that Respondents' first and second motions for extension of time to file a reply in support of the motion to dismiss (ECF Nos. 34, 36) are both granted *nunc pro tunc*.

///

///

DATED THIS 20th day of December 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE