UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JOHN VERNON FIELDS,

                    Petitioner,

   v.

RENEE BAKER, *et al.*,

                  Respondents.

Case No. 3:16-cv-00298-MMD-CLB

ORDER

I.    **SUMMARY**

Petitioner John Fields filed a petition for writ of *habeas corpus* under 28 U.S.C. § 2254 (ECF No. 15 ("Petition")). This habeas matter comes before the Court for a final decision on the merits on the sole remaining ground. The Court denies the Petition and denies Petitioner a certificate of appealability.

II.    **BACKGROUND**

Petitioner challenges his 2007 Nevada state judgment of conviction, pursuant to a jury verdict, of first-degree murder with use of a deadly weapon and conspiracy to commit murder in connection with Jaromir Palensky's death. (ECF Nos. 23-16, 23-17.) Palensky was last seen alive at a ranch outside of Elko, Nevada. (ECF No. 24-8 at 3.) The ranch was leased by Petitioner and Petitioner's wife, Linda Fields (together, the "Fieldses"). (*Id.*) The state district court sentenced Petitioner to life without the possibility of parole for the murder count, with an equal and consecutive term for the deadly weapon enhancement. (ECF No. 23-21 at 3.) Petitioner was also sentenced to a term of 48 to 120 months for the conspiracy to commit murder count, concurrent to the murder sentence. (*Id.*)

Linda Fields was tried separately. (ECF No. 31-26.) She was convicted by a jury of first-degree murder in March 2007. (*Id.*) Unlike Petitioner, Linda Fields was not charged with conspiracy to commit murder. (ECF No. 24-32 at 3 n.1.) In addition, as will be

1 discussed *infra,* the State's theory of the case against Linda Fields, her defense, and the

2 presentation of evidence at trial were not the same as the State's theory against

3 Petitioner, despite the fact that both trials related to Palensky's murder. (ECF Nos. 23-5–

4 23-15, 31-1–31-28.)

5       At Petitioner's trial, the state district court admitted prior bad act evidence showing

6 the Fieldses previously solicited someone to murder an unrelated individual, Roy Mobert.

7 (ECF No. 24-8 at 4, 6.) *See also Fields v. State*, 220 P.3d 709, 712 (2009). Petitioner

8 challenged the district court's admission of: (1) Mobert's lawyer's testimony, documents

9 Mobert's lawyer authenticated that demonstrated the Fieldses' debt to Mobert, and

10 Mobert's foreclosure proceedings against the Fieldses; and (2) a tape recording that

11 captured the Fieldses and an individual named Billy Wells discussing a proposal that

12 Wells kill Mobert and make it look like an accident ("Wells recording"). (ECF No. 24-8 at

13 4-5.) The district court conducted a *Petrocelli* hearing and gave the jury limiting

14 instructions before and after admitting the evidence. (*Id.* at 5.)

15       Petitioner appealed this decision to the Nevada Supreme Court. Upon appeal,

16 however, Petitioner's appellate counsel did not include trial exhibits, the documents

17 Mobert's lawyer authenticated, or the Wells recording (collectively, the "Mobert

18 evidence"), in the record on appeal.[1] (*Id.*) As the Nevada Supreme Court noted, it was

19 Petitioner's responsibility to provide materials necessary for the court to review. (*Id.*) The

20 record was sufficient to review Petitioner's challenge to the admitted evidence because it

21 had Mobert's lawyer's testimony as well as the pretrial and trial transcripts. (*Id.*) Without

22 the Mobert evidence, however, the court's review was limited in scope. (*Id.*)

23       Nonetheless, the Nevada Supreme Court determined the state district court

24 correctly found the Mobert evidence was "relevant to motive, intent, knowledge, and

25 identity." (*Id.* at 6.) The Nevada Supreme Court found Mobert's lawyer's testimony

26 regarding the civil litigation between Mobert and the Fieldses was properly admitted to

27

28       [1]The Nevada Supreme Court noted that the recording was played at trial, but it was not transcribed into the record. (ECF No. 24-8 at 5.)

2

1    establish the Fieldses had a shared monetary motive to kill Palensky. (*Id.* at 7.) The court

2    also reviewed arguments at the *Petrocelli* hearing regarding the Wells recording. (*Id.*) It

3    found the Mobert evidence was relevant to knowledge and intent because it "tended to

4    show that [Petitioner] was not an innocent or ignorant bystander to Linda [Fields]'s alleged

5    murderous scheme, as [Petitioner] claimed." (*Id.* at 9.) The evidence proved identity which

6    was a central disputed issue. (*Id.* at 10.) Moreover, the court determined that "there was

7    sufficient proof, independent of the Mobert evidence, to convict [Petitioner] of both murder

8    and conspiracy to commit murder." (*Id.* at 12-13.) The Nevada Supreme Court, *en banc*,

9    issued its decision affirming Petitioner's conviction on December 10, 2009. (*Id.* at 2.)

10          On that same day, the Nevada Supreme Court reversed Linda Fields' judgment of

11   conviction and remanded her case to the state district court for further proceedings. (ECF

12   No. 31-28.) *See also Fields v. State*, 220 P.3d 724, 730 (2009). The Nevada Supreme

13   Court found the district court abused its discretion "in admitting this bad act evidence

14   because the prior conspiracy was not similar enough to the crimes charged to be relevant

15   as proof of a common plan or scheme." (ECF No. 31-28 at 3.) Linda Fields' appeal was

16   decided by a three-justice panel. (ECF Nos. 24-8, 31-28.) Two of the three justices on the

17   panel dissented from the five-justice majority ruling in Petitioner's direct appeal. (*Id.*)

18   Petitioner filed a petition for rehearing of the *en banc* decision affirming Petitioner's

19   conviction, based on Linda Fields' conviction reversal, but this petition was denied with

20   no dissents. (ECF Nos. 24-9, 24-10.) In addition, the State filed a petition for *en banc*

21   reconsideration of Linda Fields' appeal that was denied on the procedural basis that the

22   State failed to file a petition for rehearing.[2] *See Fields v. State*, Case No. 49417, Doc. 10-

23   02682 (Nev. Feb. 1, 2010).

24          Petitioner filed a state habeas petition. (ECF No. 28-28.) Petitioner's appellate

25   counsel testified at the post-conviction evidentiary hearing. (ECF No. 28-23.) At the time,

26

27          [2]In addition to materials on file, the Court takes judicial notice of the online docket
     records of the state appellate court. *See, e.g., Harris v. County of Orange*, 682 F.3d 1126,
28   1131-32 (9th Cir. 2012). The online docket record may be accessed at
     https://nvcourts.gov/Supreme/.

1  counsel was the Chief Deputy Public Defender at the Elko County Public Defender's

2  Office. (*Id.* at 5-6.) Prior to that, counsel was a Deputy Public Defender in Ely, Nevada,

3  and had extensive experience handling direct appeals before the Nevada Supreme Court.

4  (*Id.* at 6-7.) During the post-conviction evidentiary hearing, counsel testified that the

5  decision not to submit the Mobert evidence as exhibits to the court was tactical. (*Id.* at

6  15.) Mobert's attorney identified the missing exhibits from the record on appeal when he

7  testified at trial, which included exhibits pertaining to civil litigation between Mobert and

8  the Fieldses, as well as the power of attorney Mobert gave Linda Fields. (*Id.* at 11-12.)

9  Counsel recalled the documentary exhibits were "comparatively vanilla" to Mobert's

10  attorney's testimony which "g[a]ve a running commentary as to how all these things

11  implicated the Fields[es]." (*Id.* at 13-14.) As such, counsel believed Mobert's attorney

12  "summed up" the exhibits and Mobert's attorney's testimony as to what the documents

13  constituted "was what really did in [Petitioner] as the prior bad acts." (*Id.* at 13.)

14      As for the Wells recording, appellate counsel testified that he believed the trial

15  judge's findings summarized the recording in great detail and adequately relayed the

16  defense's point as to why it was not admissible. (*Id.* at 14.) Further, counsel characterized

17  the recording as having a quality of "sleaziness," such that counsel believed the trial

18  judge's summary of "how harmful it was truly to [Petitioner] . . . made [the defense's]

19  argument better than submitting the tape." (*Id.* at 14-15.) Counsel believed the recording

20  tended to result in a "knee-jerk reaction" and there were "more reasons to have kept out

21  the tape than to have kept it in." (*Id.* at 19.)

22      After the evidentiary hearing, the state district court denied the petition. (ECF No.

23  24-19.) The Nevada Supreme Court affirmed the district court's denial. (ECF No. 24-32.)

24  Petitioner's federal *pro se* habeas petition was dispatched on June 2, 2016 and filed on

25  November 14, 2016. (ECF Nos. 1, 6.) The Court granted Petitioner's motion for

26  appointment of counsel and Petitioner filed an amended petition. (ECF No. 15.)

27  ///

28  ///

4

1    Petitioner alleges that his appellate counsel rendered ineffective assistance in

2    failing to submit all relevant records and exhibits to the Nevada Supreme Court in support

3    of Petitioner's appeal. (ECF No. 15 at 9.)

4    **III.    LEGAL STANDARD**

5        **A.    Review under the Antiterrorism and Effective Death Penalty Act**

6        28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in

7    *habeas corpus* cases under the Antiterrorism and Effective Death Penalty Act (AEDPA):

8        An application for a writ of habeas corpus on behalf of a person in custody
     pursuant to the judgment of a State court shall not be granted with respect
9        to any claim that was adjudicated on the merits in State court proceedings
     unless the adjudication of the claim –
10

11        (1) resulted in a decision that was contrary to, or involved an unreasonable
     application of, clearly established Federal law, as determined by the
12        Supreme Court of the United States; or

13        (2) resulted in a decision that was based on an unreasonable determination
     of the facts in light of the evidence presented in the State court proceeding.
14

15    28 U.S.C. § 2254(d). A state court decision is contrary to established Supreme Court

16    precedent, within the meaning of § 2254(d), "if the state court applies a rule that

17    contradicts the governing law set forth in [Supreme Court] cases" or "if the state court

18    confronts a set of facts that are materially indistinguishable from a decision of [the

19    Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v.*

20    *Taylor*, 529 U.S. 362, 405-06 (2000), and then citing *Bell v. Cone*, 535 U.S. 685, 694

21    (2002)). A state court decision is an unreasonable application of established Supreme

22    Court precedent under § 2254(d), "if the state court identifies the correct governing legal

23    principle from [the Supreme] Court's decisions but unreasonably applies that principle to

24    the facts of the prisoner's case." *Id.* at 75. "The 'unreasonable application' clause requires

25    the state court decision to be more than incorrect or erroneous. The state court's

26    application of clearly established law must be objectively unreasonable." *Id.*

27        The Supreme Court has instructed that "[a] state court's determination that a claim

28    lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

5

1   on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101

2   (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case

3   for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at

4   102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181

5   (2011) (internal quotation marks and citations omitted) (describing the standard as

6   "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which

7   demands that state-court decisions be given the benefit of the doubt").

8           **B.     Standard for evaluating an Ineffective-Assistance-of-Counsel claim**

9           In *Strickland*, the Supreme Court propounded a two-prong test for analysis of

10  ineffective-assistance-of-counsel claims requiring Petitioner to demonstrate that: (1) the

11  counsel's "representation fell below an objective standard of reasonableness[;]" and (2)

12  the counsel's deficient performance prejudices Petitioner such that "there is a reasonable

13  probability that, but for counsel's unprofessional errors, the result of the proceeding would

14  have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts

15  considering an ineffective-assistance-of-counsel claim must apply a "strong presumption

16  that counsel's conduct falls within the wide range of reasonable professional assistance."

17  *Id.* at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel

18  was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687.

19  Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner to

20  "show that the errors had some conceivable effect on the outcome of the proceeding." *Id.*

21  at 693. Rather, errors must be "so serious as to deprive [Petitioner] of a fair trial, a trial

22  whose result is reliable." *Id.* at 687.

23          Where a state court previously adjudicated the ineffective-assistance-of-counsel

24  claim under *Strickland*, establishing the court's decision was unreasonable is especially

25  difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court clarified that

26  *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem,

27  review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995

28  (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state

court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

In order to prevail on Petitioner's ineffective-assistance-of-appellate-counsel claim, Petitioner must show that his appellate counsel acted deficiently and "a reasonable probability that, but for his [appellate] counsel's" deficiency, "[Petitioner] would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). When evaluating claims of ineffective assistance of appellate counsel, the performance and prejudice prongs of the *Strickland* standard partially overlap. *See, e.g., Bailey v. Newland*, 263 F.3d 1022, 1028-29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Courts need not first determine whether appellate counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiency. *See Strickland*, 466 U.S. at 669. Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail. The ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Id.* at 670. The object of an ineffectiveness claim is not to grade counsel's performance. *Id.* at 697. Effective appellate advocacy requires weeding out weaker issues with less likelihood of success. *See Bailey*, 263 F.3d at 1028-29. The failure to present a weak issue on appeal neither falls below an objective standard of competence nor causes prejudice to the client for the same reason—because the omitted issue has little or no likelihood of success on appeal. *Id.*

## IV. DISCUSSION

Petitioner alleges that Petitioner received ineffective assistance of appellate counsel in violation of his federal constitutional rights when his appellate counsel failed to ///

7

1   submit all relevant records and exhibits to the Nevada Supreme Court. (ECF No. 15 at

2   9.) In Petitioner's state habeas appeal, the Nevada Supreme Court held:

3       Fields fail[ed] to demonstrate that the district court erred. Fields [did] not
        explain how counsel's decisions regarding which exhibits to include in the
4       record on appeal were objectively unreasonable. *See Lara v. State*, 120
        Nev. 177, 180, 87 P.3d 528, 530 (2004) (explaining that strategic decisions
5       are virtually unchallengeable). Moreover, Fields d[id] not explain how the
        outcome of his claim would have been different had counsel transmitted the
6       exhibits, and we reject his suggestion that he was prejudiced *per se*
        because his wife included the exhibits in her appeal and obtained relief on
7       a similar issue. [FN1] We note that the joint appendix submitted in this case
        does not include the entire trial transcripts. Therefore, even assuming that
8       appellate counsel was deficient, Fields fails to demonstrate that the result
        of his appeal would have been different. *See Greene v. State*, 96 Nev. 555,
9       558, 612 P.2d 686, 688 (1980) ("The burden to make a proper appellate
        record rests on appellant.")

10
            [FN1] Fields was charged with conspiracy to commit murder whereas
11          his wife was not.

12   (ECF No. 24-32 at 3-4.) The Nevada Supreme Court's rejection of this claim was neither

13   contrary to, nor an unreasonable application of, clearly established federal law.

14       The Nevada Supreme Court's determination that Petitioner failed to demonstrate

15   prejudice was not an objectively unreasonable application of *Strickland*.[3] Petitioner failed

16   to demonstrate a reasonable probability that the submission of the Mobert evidence in

17   the record on appeal would have changed the outcome of the appeal. Although the court

18   "noted that [Petitioner] did not transmit certain related exhibits, which limited [its] review,"

19   it nonetheless determined that "the record was sufficient to review the claim." (ECF No.

20   24-32 at 2.) The court did note Petitioner was charged with conspiracy to commit murder

21   whereas Linda Fields was not. (*Id.* at 3 n.1.) On direct appeal, the Nevada Supreme Court

22   found the Mobert evidence "had relevance to knowledge and intent," in addition to motive

23   and identity, and "tended to show [Petitioner] was not an innocent bystander to Linda

24   [Field]'s alleged murderous scheme, as he claimed." (ECF No. 24-8 at 9.) The court found

25   the state district court did not abuse its discretion in its determination that the risk of unfair

26   prejudice did not substantially outweigh the Mobert evidence's probative value,

27

28       [3]The Court does not reach the performance prong of *Strickland* here because it
     decides the case instead on the prejudice prong. *See Strickland*, 466 U.S. at 669.

8

"especially in view of the fact that the State charged [Petitioner] with conspiracy to commit murder." (ECF No. 24-8 at 12.) The Nevada Supreme Court reasonably determined Petitioner would not have prevailed on appeal if Petitioner's appellate counsel submitted the Mobert evidence in the record on appeal because the evidence was admissible as evidence of motive, intent, knowledge, and identity, and that the risk of unfair prejudice did not substantially outweigh its probative value in light of Petitioner's conspiracy to commit murder charge.

In addition, the Nevada Supreme Court "reject[ed Petitioner's] suggestion that he was prejudiced *per se* because his wife included the exhibits in her appeal and obtained relief on a similar issue." (ECF No. 24-32 at 2.) The United States Supreme Court held that presuming prejudice with respect to an ineffective-assistance-of-counsel claim is warranted when "counsel failed to function in any meaningful sense as the Government's adversary." *United States v. Cronic*, 466 U.S. 648, 666 (1984). The Court has presumed prejudice on appeal only in a limited number of situations: (1) when a defendant is denied appellate counsel; and (2) when appellate counsel fails to file a notice of appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000); *Garza v. Idaho*, 139 S. Ct. 738, 749-50 (2019). Petitioner was not denied appellate counsel and an appeal was litigated on Petitioner's behalf. Therefore, the Nevada Supreme Court's determination Petitioner failed to demonstrate prejudice *per se* was not an objectively unreasonable application of clearly established federal law.

Because the Nevada Supreme Court's denial of Petitioner's ineffective-assistance-of-appellate-counsel claim was neither contrary to, nor an objectively unreasonable application of, clearly established federal law, the Court denies Petitioner federal habeas relief.

The Court would reach the same result on the prejudice prong of *Strickland* on *de novo* review for the following reasons. Petitioner and Linda Fields were tried separately with differing defenses and theories, which led to the prior bad acts evidence being presented for different purposes in the separate trials. Petitioner defended himself on the

basis that Petitioner did not murder Palensky and that someone else, a stranger or another individual, acting with Linda Fields committed the murder. (ECF No. 24-8 at 4.) Petitioner maintained he did not know about the alleged scheme to murder Palensky. (*Id.*) As such, the State offered the Mobert evidence to show financial motive, intent, knowledge, and identity. (*Id.* at 6.) At Linda Fields' trial, however, the State offered the Mobert evidence to show proof of financial motive because it showed Linda Fields' involvement in a prior murder solicitation was also financially motivated. (ECF No. 31-28 at 9.) Therefore, the Mobert evidence had additional relevance in Petitioner's trial than in Linda Fields' trial.

In addition, at Linda Fields' trial, the State presented an alternative motivation theory that Linda Fields killed Palensky for molesting her grandson. (ECF No. 31-28 at 10.) The Nevada Supreme Court found this alternative theory was "not at all in line with the State's theory of relevancy with respect to evidence of the Mobert conspiracy – that the Fieldses took advantage of elderly victims by changing their wills and then hiring an outsider to kill them." (*Id.* at 10-11.) The court found the Mobert evidence was more prejudicial than probative "and it led to serious jury confusion since the State also argued [Linda Fields'] motive was based upon the alleged molestation." (*Id.* at 12.) In contrast, at Petitioner's trial, the State theorized Linda Fields' statements that Palensky and Mobert were child molesters were false accusations to "discredit and devalue" the murder targets. *Fields*, 220 P.3d. at 715 n.3. Therefore, at Petitioner's trial, the State presented the evidence regarding molestation accusations in a manner that was not inconsistent with the murder for financial gain conspiracy theories.

Furthermore, the State referred to and used the Mobert evidence more extensively at Linda Fields' trial. The Nevada Supreme Court noted that at Petitioner's trial, the State "made minimal mention of the Mobert evidence, addressing it once, briefly, in regard to the Fieldses' financial straits and the financial motive," as well as "a second time addressing the conspiracy charge against [Petitioner.]" (ECF No. 24-8 at 12.) At Linda Fields' trial, the state district court noted that "[t]he State spent considerable time playing

excerpts of the recordings" and "continually referenced the Mobert conspiracy during its closing argument, while also arguing that [Linda Fields] murdered Palensky for molesting her grandson." (ECF No. 31-28 at 12.) Because Petitioner and Linda Fields had separate trials that were different based on the presentation of evidence, arguments, and theories of the case, there were multiple substantial distinctions contributing to why the three-judge panel in Linda Fields' appeal reached a different conclusion on the prior bad acts evidence than the *en banc* decision reached in affirming Petitioner's conviction. Therefore, in the alternative, the Court on *de novo* review would reach the same result.

## V.  CERTIFICATE OF APPEALABILITY

This is a final order adverse to Petitioner. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the Petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Applying this standard, the Court finds a certificate of appealability is unwarranted.

## VI.  CONCLUSION

It is therefore ordered that Petitioner's writ of *habeas corpus* (ECF No. 15) is denied.

It is further ordered that Petitioner is denied a certificate of appealability.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 2nd Day of November 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

11